# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BOSEOVSKI, <br><br> Plaintiff, <br><br> v. <br><br> McCLOUD HEALTHCARE CLINIC, INC., <br><br> Defendant. | No. 2:16-CV-2491-DMC <br><br><br> ORDER |

Plaintiff, who is proceeding with retained counsel, brings this civil action. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court is defendant's motion for summary adjudication (ECF No. 51).

## I. BACKGROUND

**A.    Factual Allegations**

This action proceeds on the original unverified complaint. Plaintiff claims that Merritt Hawkins (apparently a placement firm and not a defendant to this action) posted a job opening for a dentist with defendant which offered student loan forgiveness, a base salary of $195,000 per year, a signing bonus, a relocation stipend, three weeks of vacation, a four-and-

1

one-half-day work week, and other "great benefits." According to plaintiff, after correspondence with Merritt Hawkins, he began speaking directly with defendant's Chief Executive Officer, Michael Schaub. Plaintiff states that he rejected the first offer of employment, but agreed to a four-year employment contract after being "assured by Mr. Schaub that the Clinic was not a high-volume practice. . . ." Plaintiff alleges that the contract contains the following provisions:

| | | |
|---|---|---|
| ¶ V(C)(2) | | The term of employment will be four years. |
| ¶ VI(C)(3) | | Defendant may immediately terminate employment by providing two weeks notice, and defendant reserves the right to terminate employment immediately for just cause. |
| ¶ IV(A) D | | Defendant would schedule a minimum average of 8-10 visits per day barring unforeseen circumstances. |

On April 10, 2016, plaintiff signed various employment documents with defendant which, according to plaintiff, had hidden among them "boilerplate language converting his promised four-year employment agreement to an at-will. . . ." In May 2016 plaintiff closed his practice and relocated from Santa Rosa to McCloud.

Plaintiff next alleges that, shortly after commencing his employment with defendant, he began to notice "various issues regarding the work environment" he found "unsafe, unlawful, and in need of correction." Specifically, plaintiff outlines the following four areas of concern:

1. The office manager was unable to properly train and exhibits a hostile attitude.
2. Two employees with patient responsibilities appeared to be drinking alcohol while on duty.
3. Defendant's practice of billing Denti-Cal was unlawful.
4. Patient volume (22-25 patients per day) exceeded the terms of plaintiff's contract.

Plaintiff states that he brought these issues to defendant's attention in May and June 2016 and that, shortly thereafter, defendant "began a campaign to manufacture reasons to terminate Plaintiff's employment." According to plaintiff: "These efforts to prematurely end the contract following Plaintiff's reports of unlawful and unsafe working conditions included

2

willfully intercepting through an electronic device his oral communications with the dental staff at the Clinic's facility to find reasons to terminate his employment." More specifically, plaintiff alleges as follows in the complaint:

> ¶ 15. The Clinic knowingly and intentionally directed and was aware of the use of an electronic device to record discussions that Plaintiff had with third parties (*e.g.*, coworkers and patients).
>
> ¶ 16. The Clinic intercepted oral communications between Plaintiff and third parties as part of its campaign to prematurely terminate his employment. In fact, in or about June 2016, Michael Schaub admitted to Plaintiff that he had authorized the surreptitious interception of Plaintiff's oral communications by electronic means at the Clinic's facility.
>
> ¶ 17. Plaintiff is informed and believes that the Clinic intercepted numerous additional oral communications between Plaintiff and third parties without authorization or consent from any party to the communication.

Plaintiff states that his employment was terminated on July 11, 2016. According to plaintiff, he was told by defendant his employment was at-will, he had engaged in misuse of prescription software, and had a poor "chair-side manner." Plaintiff alleges that defendant failed to conduct any type of investigation prior to terminating his employment.

### B. <u>Legal Claims</u>

Plaintiff asserts seven legal theories in his complaint as follows:

| | |
|---|---|
| First Claim | Violation of federal wiretapping statutes, 18 U.S.C. §§ 2511 and 2520. |
| Second Claim | Violation of California Labor Code § 970. |
| Third Claim | Fraud. |
| Fourth Claim | Negligent misrepresentation. |
| Fifth Claim | Breach of Contract. |
| Sixth Claim | Wrongful Termination. |
| Seventh Claim | Defamation. |

/ / /

/ / /

/ / /

/ / /

3

**C. Procedural History**

Defendant sought dismissal of plaintiff's sole federal claim – alleged violations of 18 U.S.C. §§ 2511 and 2520 – by way of a motion to dismiss filed on November 5, 2016. The court denied the motion in an order issued on June 23, 2017, reasoning that plaintiff's factual allegations were sufficient to state a plausible claim for violation of the federal wiretapping statutes at issue. Defendant filed its answer on July 25, 2017, and thereafter the matter was scheduled. The pre-trial conference is currently set for December 17, 2019, and a jury trial is set to commence on February 10, 2020.

## II. THE PARTIES' EVIDENCE

**A. Defendant's Evidence**

According to defendant, the following facts are not in dispute:

Facts related to Plaintiff's First Claim

1. McCloud Healthcare Clinic, Inc. (Clinic), is a non-profit community health center.

2. Since its inception, the Clinic has never admitted patients for a 24-hour or longer stay.

3. On January 18, 2016, plaintiff signed a written employment agreement.

4. The Clinic signed the employment agreement on January 25, 2016.

5. The employment agreement was for a term of four years, but the agreement could be terminated earlier by either party for several reasons.

6. The employment agreement was the final contract that applied to plaintiff's employment.

7. Plaintiff began working for the Clinic on May 2, 2016.

8. Plaintiff's normal work schedule was Monday through Thursday for 10 hours each day.

9. Plaintiff was terminated on July 11, 2016, due to, among other things, several incidents of inappropriate behavior and complaints from staff and patients.

10. The Dental Department staff held regular weekly meetings during plaintiff's employment.

4

11. At one such meeting in early June 2016, Angela Rubin recorded the dental staff meeting on her cell phone.

12. Ms. Rubin had been hired in May 2016 as a receptionist.

13. Prior to the meeting she recorded, Ms. Rubin had become aware that some important changes involving procedures and protocols in the Dental Department were going to be discussed at the meeting.

14. No one directed Ms. Rubin to record the meeting.

15. Plaintiff attended the June 2016 staff meeting, as did Ms. Rubin, and dental assistant Mary Frances Fletcher.

16. Ms. Rubin and Ms. Fletcher were present during the entire meeting.

17. During the recorded meeting, no private information was communicated.

18. The basis of plaintiff's wiretap claim is the audio recording of the June 2016 staff meeting made by Ms. Rubin.

<u>Facts Relating to Plaintiff's Second, Third, and Fourth Claims</u>

1. The written employment agreement contains an integration clause.

2. The employment agreement does <u>not</u> promise plaintiff student loan forgiveness or that his practice would not be "high volume."

<u>Facts Relating to Plaintiff's Fifth Claim</u>

1. The agreement referred to by plaintiff in his complaint is the written employment agreement signed by plaintiff on January 18, 2016.

<u>Facts Relating to Plaintiff's Sixth Claim</u>

1. The Clinic has never organized, maintained, and/or operated any facility to which persons or patients are admitted for a 24-hour stay or longer.

In support of its statement of facts not in dispute, defendant submits the declaration of James Proffitt, the Clinic's Chief Financial Officer during the times of plaintiff's employment, and currently the Clinic's Chief Executive Officer. Defendant also states the declaration of Ms. Rubin supports its motion, but no such declaration was filed with defendant's moving papers. Finally, defendant's motion is supported by the declaration of defendant's counsel, Mark Vegh, Esq., and exhibits attached thereto consisting of portions of the transcripts of the depositions of plaintiff and Michael Schaub.

///

Regarding the declaration of Ms. Rubin referenced in defendant's moving papers, it appears defendant may have intended to reference portions of Ms. Rubin's deposition. With its reply, defendant submits a supplemental statement of undisputed facts referencing Ms. Rubin's deposition. Defendant also submits Mr. Vegh's supplemental declaration with portions of the transcript of Ms. Rubin's deposition attached. Plaintiff objects to the late submission of this evidence.

Regarding the depositions transcripts referenced in defendant's briefs, only excerpts of which have been filed, the court notes that defendant has <u>not</u> provided the court will complete copies of the referenced deposition transcripts, as required under Eastern District of California Local Rules 260(e) and 133(j).

### B. <u>Plaintiff's Evidence</u>

In opposition to defendant's motion, plaintiff submits the declaration of Barbara Figlia, a dental assistant at the Clinic during the time of plaintiff's employment, who provides information regarding the recording made by Ms. Rubin. Also provided in opposition is the declaration of plaintiff's counsel, Benjamin L. Kennedy, Esq., and exhibits attached thereto.

In particular, plaintiff provides portions of the deposition of Caleb Ott. <u>See</u> ECF No. 53-3, Exhibit 2. Mr. Ott testified that, in addition to the Rubin recording, he was aware of "a recording brought forward by Debbie Fletcher," a registered dental assistant. <u>See</u> <u>id.</u> at 64.

### III. STANDARD FOR SUMMARY ADJUDICATION

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. <u>See</u>

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

In its motion for summary adjudication, defendant seeks judgment as a matter of law on plaintiff's first, second, third, fourth, and fifth claims. Defendant also argues that judgment as a matter of law in its favor is appropriate on "that part of Plaintiff's sixth claim that alleges and seeks damages for wrongful termination in violation of public policy set forth in California Health & Safety Code Section 1287.5." Defendant does not seek a ruling as to plaintiff's seventh claim for defamation.[1]

### A. **First Claim**

Plaintiff's wiretap claim is premised on 18 U.S.C. §§ 2511 and 2520. Under 18 U.S.C. § 2511(1)(a), criminal liability is imposed on any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." Under 18 U.S.C. § 2520(a), as amended in 1986, any person whose communications are intercepted in violation of § 2511 may bring a civil action

///
///
///
///

---

[1] Plaintiff has abandoned the seventh claim for relief. See ECF No. 57 (parties' joint pre-trial statement).

8

against the "person or entity" which engaged in that violation.[2]  Private individuals who are parties to the communications in question are generally exempt from liability.  See 18 U.S.C. § 2511(2)(d).

According to defendant, plaintiff's wiretap claim fails as a matter of law because: (1) plaintiff cannot show that defendant "intercepted" his communications; (2) if he could, plaintiff still cannot prevail because he cannot show that his communications were recorded for a criminal or tortious purpose; (3) a separate defense exists because Ms. Rubin consented to her own recording of the meeting; and (4) plaintiff had no expectation of privacy during the recorded meeting.

        1.      <u>Intercept by Defendant</u>

Citing <u>Peavy v. WFAA-TV, Inc.</u>, 221 F.3d 158 (5th Cir. 2000), defendant argues:

> . . . [I]t is irrelevant whether the Clinic 'knowingly and intentionally directed' or 'was aware of the use of' a cell phone to record Plaintiff's discussions at a staff meeting.  Plaintiff must show credible evidence that the defendant Clinic 'intercepted' Plaintiff's communications under conditions giving rise to liability under the Wiretap Act.
>
> ECF No. 51-1, pg. 9.

Defendant cites no in-circuit authorities in support of its contention.

In essence, defendant renews the argument the court rejected in the context of its motion to dismiss that, as a matter law, it is not among the class of defendants allowed under 18 U.S.C. § 2520(a) because it did not directly intercept plaintiff's communications.  According to defendant, liability cannot extend to it even if it procured others to intercept plaintiff's communications because the "or procures another person" language was removed from § 2520(a).  Defendant reasons that only conduct by it, the Clinic, as opposed to any person acting

---

[2] Prior to 1986, the statute read: "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter (1) shall have a civil cause of action against any person who intercepts, discloses, or uses, <u>or procures any other person to intercept, disclose, or use such communications</u>, and (2) be entitled to recover from any such person [damages, attorney's fees, and costs]."  <u>See</u> 18 U.S.C. § 2520 (1970) (emphasis added); <u>see also</u> <u>Oceanic Cablevision, Inc. v. M.D. Elecs.</u>, 771 F. Supp. 1019, 1027 (D. Neb. 1991) (recognizing elimination of the "or procures another person" language from § 2520(a) pursuant to the 1986 amendment).

9

on behalf of the Clinic, may be held liable under the Wiretap Act.

The court does not agree. In Peavy, the Fifth Circuit concluded that the plain language of § 2520(a), as amended in 1986, narrowed the class of possible defendants under § 2520(a) in the way defendant here suggests. See 221 F.3d 158. Specifically, the court held that procurement of another to intercept no longer gives rise to a violation of the underlying criminal statute, § 2511(1)(a). See id. The Fifth Circuit did not, however, consider the other change made to § 2520(a) in 1986, specifically addition of language allowing recovery from the "person or entity" which engaged in the violation of § 2511(1)(a).

Prior to 1986, § 2520(a) essentially mirrored the language of the underlying criminal statute, providing recovery against a person who intercepts or procures another to intercept. See 18 U.S.C. § 2520(a) (1970). After 1986, § 2520(a) allowed for recovery against the "person or entity" which engaged in the violation of § 2511(1)(a). See 18 U.S.C. § 2520(a) (1986). The underlying criminal statute – § 2511(1)(a) – which was not amended in 1986 to delete the "or procures another person" language – continues to specify that one who procures another is in violation of the criminal statute, a point which the Fifth Circuit in Peavy recognized but did not discuss. It is this court's view that the deletion of the procurement language in § 2520(a) is of no moment given that the language remains in the underlying criminal statute and the simultaneous amendment of § 2520(a) to provide for recovery against the "person or entity" which violated of § 2511(1)(a). Given that procurement can still give rise to a violation under § 2511(1)(a), and given that an entity may be civilly liable under § 2520(a) for that violation, defendant in this case may be held civilly liable if it violated the underlying criminal statute by way of procurement.

Defendant has not cited any in-circuit authority, and the court is aware of none, which adopts the Fifth Circuit's opinion that the 1986 amendments to § 2520(a) limit the possible class of defendants in a civil action arising from violation of § 2511(1)(a). Finally, the court observes that other district courts have questioned the Fifth Circuit's holding in Peavy. In

///

///

Lonegan v. Hasty, 436 F. Supp. 2d 419 (E.D.N.Y 2006), the court stated:

> . . .[T]he more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations. In relevant part, the amended statute provides that "any person whose wire, oral, or electronic communication is intercepted . . . in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation. . . ." 18 U.S.C. § 2520 (2005). Pursuant to Section 2511(1)(a), the class of persons whose communications are intercepted in violation of the Wiretap Act includes those persons whose communications are intercepted by someone who was procured to do so by a third party. In such case, both the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue any person or entity who engaged in that violation.

Id. at 427-78.

In another case, DirecTV, Inc. v. Barrett, 311 F. Supp. 2d 1143 (D. Kan. 2004), the court concluded that "[t]he fact that Plaintiff also alleges that Defendants 'procured other persons to intercept' Plaintiff's signals [under § 2511(1)(a)] does not invalidate Count Two [under § 2520(a)]." Id. at 1146.

    2.  Purpose of Recording

Under 18 U.S.C. § 2511(1)(d), a person who is a party to a recorded conversation is not liable unless he or she makes the recording for some criminal or tortious purpose. Under § 2511(2)(d), a party to the communication is anyone who is present when the communication is uttered. From these provisions, defendant concludes: "Here, Ms. Rubin recorded the meeting because, as a new hire, she wanted to ensure she understood the procedural changes about to be implemented in the department [DSUF 14]. No evidence exists of any purpose to commit a criminal or tortious act."

Defendant's argument is misplaced. Whether Ms. Rubin has a defense or not is irrelevant, as she is not a party to this action. Similarly, whether the "criminal or tortious purpose" exception applies such that Ms. Rubin would lose her defense under § 2511(1)(d) is irrelevant.

///

///

///

3. <u>Consent to Recording</u>

Without citation to in-circuit authority, defendant contends a separate and complete defense exists where at least one party to the recorded communication consents to its interception. According to defendant: "Here, no other person directed Angela Rubin to record the meeting [DSUF 15]. She clearly did so on her own volition, and thus consented to her own recording of the meeting."

Defendant's argument is unpersuasive. First, defendant references Ms. Rubin's declaration which has not been filed. Second, to the extent defendant relies on the late-filed portions of Ms. Rubin's deposition transcript, defendant has failed to provide the full transcript as required under the local rules. Third, even if Ms. Rubin consented to the <u>recording</u>, nothing in defendant's argument supports a conclusion that Ms. Rubin consented to <u>interception</u> of her recording by the Clinic. Finally, as indicated above, defendant's argument is silent as to other recordings not made by Ms. Rubin, for example the recording made by Debbie Fletcher referenced in the Ott deposition testimony provided by plaintiff in opposition to defendant's motion.

4. <u>Expectation of Privacy</u>

Again, citing only the out-of-circuit authority of <u>Bianco v. American Broadcasting Companies, Inc.</u>, 470 F. Supp. 182 (N.D. Ill. 1979), defendant contends it cannot be liable because plaintiff had no expectation of privacy in the staff meeting recorded by Ms. Rubin. <u>Bianco</u> does not support defendant's position. In <u>Bianco</u>, the court observed:

> We note that the federal statute required only that plaintiffs show that they had no expectation that their communications were being *intercepted through the use of electronic devices.* Thus, we believe that that may be some circumstances where a person does not have an expectation of total privacy, but still would be protected by the statute because he was not aware of the specific nature of another's invasion of his privacy.
>
> <u>Id.</u> at 185 (emphasis in original).

Such is the case here. Even assuming plaintiff did not have an expectation of privacy in the contents of the recording made by Ms. Rubin or others, plaintiff was clearly not aware of the Clinic's interception of his communications. Defendant does not cite, and the court is not aware

12

of any, in-circuit authority supporting defendant's position. Again, there remains a triable issue of material fact, and no summary adjudication is appropriate here.

### B. Second, Third, and Fourth Claims

In his second, third, and fourth claims, plaintiff alleges misrepresentation with respect to the employment agreement. The third and fourth claims are based on common law fraud and negligent misrepresentation. The second claim is based on an alleged violation of California Labor Code § 970. Section 970 prohibits false representation in the context of employment agreements and is essentially an anti-fraud provision, resting on the tort of deceit. See Funk v. Sperry Corporation, 842 F.2d 1129, 1133 (9th Cir. 1987). According to defendants, the second, third, and fourth claims are all barred by California's statute of frauds, found at California Civil Code § 1624.

Under § 1624, certain contracts are invalid unless they are in writing. In particular, an oral contract that by its terms cannot be completed within a year are unenforceable. See Cal. Civil Code § 1624(1). According to defendant, plaintiff's claims are based on an oral promise by the Clinic of an employment contract for a four-year term. Defendant concludes that, because the contract at issue is not written and is for a term longer than one year, it is unenforceable and cannot support plaintiff's second, third, or fourth claims.

Defendant's argument is deficient on this point. As defendant concedes, plaintiff signed a written employment contract on January 18, 2016. Because this case involves a written contact and not an oral contract, the statute of frauds does not bar plaintiff's contract-based claims. Moreover, the court notes that the parties agree that "[n]o misrepresentation of fact, mistake, or other matters affect the validity of the contract." ECF No. 57 (parties' joint pre-trial statement).

### C. Fifth Claim

In his fifth claim, plaintiff alleges breach of the January 2016 employment contract. The contract is provided to the court at Exhibit A to the declaration of Mark Vegh filed in support of defendant's motion. Article VI, paragraph C(2) of the contract provides that the "agreement may be terminated by either party upon giving a 60-day written notice to the

1   other party." According to defendant, the plain language of the contract bars any action for
2   breach of contract resulting from plaintiff's alleged termination without cause because
3   plaintiff's employment was at-will.
4   　　　　While the contract clearly contains an at-will termination provision, it also
5   contains termination-for-cause provisions, at Article VI, paragraphs C(3) and D. As defendant
6   states, it is undisputed that plaintiff was terminated on July 11, 2016, based on allegations of
7   inappropriate behavior and complaints from staff. Thus, plaintiff was terminated under the
8   for-cause provision and not the at-will provision. Defendant has not presented any evidence
9   that, in terminating plaintiff for cause, the Clinic did not violate the provisions of the for-cause
10  termination portions of the contract. Given that defendant has not presented evidence
11  regarding whether plaintiff's for-cause termination violated the for-cause termination
12  provisions of the employment agreement, this issue is not currently before the court and
13  remains open for trial.

### D.    Sixth Claim

15  Plaintiff alleges he was terminated by the Clinic following his complaints of
16  unsafe working conditions and, as such, his termination was retaliatory and violated California
17  public policy. The claim is essentially a wrongful termination claim under state law.
18  According to plaintiff, the claim arises under, but not limited to, California Health & Safety
19  Code § 1278.5, California Business & Professions Code §§ 1680 and 1681, California Labor
20  Code §§ 970 and 1102.5, and various provisions of the California Code of Regulations.
21  Defendant argues that plaintiff's claim cannot proceed under California Health
22  & Safety Code § 1278.5 because that provision only applies to health care facilities that admit
23  patients for longer than 24-hour periods, which the Clinic does not. This argument is
24  persuasive and plaintiff conceded the point at the hearing. See Sneddon v. ABF Freight
25  Systems, 489 F. Supp. 2d 1124 (S.D. Cal. 2007). Defendant has made no argument or
26  presented any evidence regarding the other legal bases of plaintiff's sixth claim. Defendant's
27  motion regarding the sixth claim is specifically limited to whether the claim can proceed under
28  California Health & Safety Code § 1278.5. The parties agree that it cannot. Plaintiff's sixth

claim remains to the extent it is <u>not</u> premised on violation of § 1278.5.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary adjudication (ECF No. 51) is granted in part and denied in part;

2. Defendant's motion is granted as to plaintiff's Sixth Claim to the extent that claim is premised on a violation of California Health & Safety Code § 1278.5, which is inapplicable to this action; and

3. Defendant's motion is denied as to all other claims.


Dated: January 7, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE